# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MARY DYSART, :

                Plaintiff,

-vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                Defendant. :

Case No. 3:09-cv-337

District Judge Thomas M. Rose
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disabled widow's or widower's benefits, ("WIB"), a claimant must be unmarried, between the ages of fifty and sixty, be the spouse of a wage earner who dies fully insured, file an application for such benefits, and be under a disability as defined in the Social Security Act. 42 U.S.C. §402(e). To establish disability, a claimant for WIB must prove that he or she suffers from a physical or mental impairment of such severity as to prevent the claimant from engaging in his or her previous work and, considering the claimant's age, education, and work experience, any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §423.

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial

2

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for WIB in December, 2000, which was denied at the Appeals Council level of review and Plaintiff took no further appeal. (Tr. 45-53; 54). Plaintiff filed a second application for WIB in September, 2003, alleging disability from April 22, 2002, due to scleroderma, Raynaud's, pernicious anemia, hypothyroidism, arthritis, and tinnitus. (Tr. 75-75; 85). Plaintiff's application was denied initially and on reconsideration. (Tr. 58, 63, 66). Administrative Law Judge Melvin Padilla held a hearing, (Tr. 335-70), following which he found that Plaintiff is not disabled. (Tr. 15-34). The Appeals Council denied Plaintiff's request for review, (Tr. 4-7), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that she has severe obesity with arthralgias and adjustment disorder with features of depression and anxiety, but that

she does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 22, ¶ 4; Tr. 26, ¶ 5). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a limited range of medium work. (Tr. 26, ¶ 6). Judge Padilla then used sections 203.21 through 203.24 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 32, ¶ 11). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 34).

The record contains Plaintiff's treatment notes from Day-Mont Behavioral Health Care dated April 30 through August 27, 2002. (Tr. 227-34). Those notes reveal that when psychologist Dr. Mills first evaluated Plaintiff, she reported that Plaintiff was seeking services for her anxiety and panic attacks, was treated for agoraphobia about twenty years ago, and that she went to school to the tenth grade and earned her GED. *Id.* Dr. Mills also reported that Plaintiff seemed mildly to moderately anxious at times, was cooperative, had flat speech and normal thoughts, and that her judgment and insight were fair. *Id.* Dr. Mills identified Plaintiff's diagnoses as panic disorder with agoraphobia and adjustment disorder with anxiety; she assigned Plaintiff a GAF of 50. *Id.* At the time Plaintiff completed treatment in August, 2002, it was noted that she had made good treatment progress; her anxiety, depression, and agoraphobia symptoms diminished; and that she had met her goals. *Id.*

April 2, 2003, x-rays of Plaintiff's cervical, lumbar, and thoracic spines were negative. (Tr. 142-44).

The record contains a copy of Plaintiff's treatment notes from the East Dayton Health Center dated January 30, 2003, through April 20, 2006, where Plaintiff was treated primarily by Dr.

4

Griffith for her medical impairments and by Ms. Sperry, a psychology trainee, for her alleged mental impairments. (Tr. 146-74; 248-58; 263-300; 312-14). Those records reveal that Plaintiff received treatment for Raynaud's phenomenon, pernicious anemia, hypothyroidism, dermatitis, contusions secondary to a motor vehicle accident, dysthymia, and major depressive disorder *Id.*

With respect to Plaintiff's exertional impairments, on May 20, 2005, Dr. Griffith reported that she had been treating Plaintiff since January, 2003, at which time she had symptoms consistent with Raynaud's phenomenon, pernicious anemia, and hypothyroidism, that she experiences a great deal of fatigue, and that she has neck pain and intermittent numbness in her hands. *Id.* Dr. Griffith also reported that Plaintiff had difficulty carrying things because of the Raynaud's, ongoing pain in her hands and feet, dyspnea on exertion likely due to her deconditioning, and that she required rest throughout the day. *Id.* Dr. Griffith noted that Plaintiff perceived her symptoms as limiting, her pain from Raynaud's was limiting, and that she was disabled from working. *Id.* Dr. Griffith opined that Plaintiff was able to lift/carry up to two pounds frequently and occasionally, stand for one to two hours in an eight-hour day and for fifteen minutes without interruption, sit for five hours in an eight-hour day and for one hour without interruption, that she was not capable of performing medium, light, or sedentary work, and that she would be absent more than three times a month due to her impairments. *Id*.

In an undated report, Ms. Sperry noted that Plaintiff had a history of panic attacks, anxiety, and agoraphobia, still had panic attacks but they appeared to be significantly lessened, her prior relationship with a man was the focus of many of their sessions, she was an excellent therapy client, and that she made much progress. (Tr. 260).

Examining psychologist Dr. Bonds reported on May 10, 2004, that Plaintiff was very

5

overweight, had normal speech, her mood was depressed, and that her affect was broad and appropriate to thought content. (Tr. 184-91). Dr. Bonds also reported that Plaintiff did not display any overt signs of anxiety, had normal thought content, was alert and oriented, and that she had sufficient insight, judgment, and reasoning abilities to make important decisions and to live independently. *Id.* Dr. Bonds noted that Plaintiff's verbal IQ was 89, her performance IQ was 85, and her full scale IQ was 87, her memory was in the borderline range, and that she read at the 7.2 grade level although that might have been an underestimate of her ability since she did not have her reading glasses with her. *Id.* Dr. Bonds identified Plaintiff's diagnosis as anxiety disorder NOS and he assigned her a GAF of 65. *Id.* Dr. Bonds opined that Plaintiff's abilities to relate to others and to maintain concentration and attention were not significantly limited, her ability to understand, remember, and follow directions was not limited, and her ability to withstand the stress and pressures associated with day-to-day work activity was mildly limited. *Id.*

Ms. Sperry reported on April 14, 2005, that she had been treating Plaintiff since September, 2004, her diagnoses were major depressive disorder recurrent and moderate and which could be severe at times, generalized anxiety disorder, and dysthymic disorder, and that she was not capable of performing many work-related mental activities. (Tr. 235-47). Ms. Sperry also reported that Plaintiff suffered from memory lapses and lack of concentration, had difficulty focusing on a task, had difficulty with crying spells, and that she had marked restrictions of activities of daily living, marked difficulties in maintaining social functioning, and marked deficiencies of concentration, persistence, or pace. *Id.* Psychologist Dr. Fraser co-signed the report that Ms. Sperry prepared. *Id.*

The record contains a copy of Plaintiff's treatment notes from the Miami Valley

6

Hospital Med Surg Health Center dated July 30, 2003, through December, 2005, where Plaintiff was treated by rheumatologist Dr. Griffin. (Tr. 176-83; 320-34). Those notes reveal that Dr. Griffin treated Plaintiff for limited scleroderma, Raynaud's phenomenon, and mild degenerative joint disease. *Id.* On April 8, 2005, Dr. Griffin reported that Plaintiff was able to lift/carry two to three pounds occasionally and one pound frequently, stand/walk for two hours in an eight hour workday and for one-half hour without interruption, her ability to sit was not impaired, that she was not able to perform sedentary, light, or medium work, and that she would be absent more than three times a month due to her impairments. (Tr. 315-19).

Plaintiff alleges in her Statement of Errors that the Commissioner erred by rejecting her treating physicians' opinions. (Doc. 6). Specifically, Plaintiff argues in support of her Error that the Commissioner erroneously rejected the opinions of Drs. Griffith and Griffin. *Id.*

"In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards." *Blakley v. Commissioner of Social Security,* 581 F.3d 399, 406 (6th Cir. 2009). "One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations."

*Id.*, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

"The ALJ 'must' give a treating source opinion controlling weight if the treating

source opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley,* 581 F.3d at 406*, quoting, Wilson,* 378 F.3d at 544*.* "On the other hand, a Social Security Ruling[1] explains that '[i]t is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial evidence in the case record.'" *Blakley, supra, quoting,* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996). "If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley,*582 F.3d at 406*, citing, Wilson,* 378 F.3d at 544*, citing* 20 C.F.R. § 404.1527(d)(2).

"Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion." *Blakley,* 581 F.3d at 406, *citing,* 20 C.F.R. §404.1527(d)(2). "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley,* 581 F.3d at 406-07,*citing,* Soc.Sec.Rule 96-2p, 1996 WL 374188 at *5. "The *Wilson* Court explained the two-fold purpose behind the procedural requirement:

---

FN 1. Although Social Security Rulings do not have the same force and effect as statutes or regulations, "[t]hey are binding on all components of the Social Security Administration" and "represent precedent, final opinions and orders and statements of policy" upon which the agency relies in adjudicating cases. 20 C.F.R. § 402.35(b).

> The requirement of reason-giving exists, in part, to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied. *Snell v. Apfel,* 177 F.3d 128, 134 (2nd Cir. 1999). The requirement also ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."

*Blakley,* 581 F.3d at 407, *citing, Wilson,* 378 F.3d at 544. "Because the reason-giving requirement exists to ensure that each denied claimant received fair process, the Sixth Circuit has held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given '*denotes a lack of substantial evidence,* even where the conclusion of the ALJ may be justified based upon the record.'" *Blakley, supra, quoting, Rogers v. Commissioner of Social Security.,* 486 F.3d 234, 253 (6th Cir. 2007)(emphasis in original).

In rejecting Dr. Griffin's opinion, Judge Padilla found that Dr. Griffin's opinion post-dates the prescribed period by two years, he saw Plaintiff only occasionally, he did not identify the impairments that allegedly disabled Plaintiff, and his opinion was not supported by clinical findings. (Tr. 28). This Court cannot say that Judge Padilla erred in his analysis.

First, in determining that Plaintiff is not entitled to WIB, Judge Padilla determined that the prescribed period ended on April 30, 2003, (Tr. 22, ¶ 2), and Plaintiff does not dispute that determination. In contrast, Dr. Griffin gave his opinion on April 8, 2005, just short of two years after the end of the prescribed period. In rendering his opinion, Dr. Griffin failed to identify any impairment or impairments that allegedly disable Plaintiff. In addition, a review of Dr. Griffin's treatment notes reveals that over the period July 3, 2003, through January 29, 2004, Dr. Griffin saw

9

Plaintiff on only four occasions. Dr. Griffin's notes from those visits reveal that although Plaintiff complained of some pain in her hands, she had almost full ranges of motion, that her symptoms were not limiting her daily activities, that the pain was relieved with the use of non-narcotic medications, and that the stiffness in her hands improved with activity. Further, Dr. Griffin's notes are primarily a recitation of Plaintiff's subjective complaints and contain few objective clinical findings to support his opinion that Plaintiff is disabled. Finally, Dr. Griffin's opinion is inconsistent with the reviewing physicians' opinions. (Tr. 221-26).

Similarly, Judge Padilla rejected Dr. Griffith's opinion because, like Dr. Griffin's, it post-dates the end of the prescribed period by two years. (Tr. 28-29). In addition, Judge Padilla rejected Dr. Griffin's opinion on the bases that Dr. Griffin apparently changed Plaintiff's ability to sit from six hours to five hours so that when those hours were added to the number of hours Dr. Griffith opined Plaintiff was able to stand/walk, the total number of hours would not be sufficient to complete an eight-hour workday, because Dr. Griffith saw Plaintiff on only a few occasions, and because her clinical notes contain few objective findings to support her opinion. As noted above, the prescribed period at issue ended on April 30, 2003. However, Dr. Griffith's opinion is dated May 20, 2005, more than two years after the end of the prescribed period. In addition, a review of Dr. Griffith's May, 2005, opinion reveals that she indeed changed her opinion as to Plaintiff's ability to sit from six hours to five hours. (Tr. 250). In addition, Dr. Griffith seemed to base her opinion, at least in great part, on the fact that Plaintiff perceived her symptoms as limiting. A review of Dr. Griffith's clinical notes shows that prior to the end of the prescribed period, she saw Plaintiff on only about four occasions and subsequently saw her on about five occasions during the period July, 2004, through April, 2006. Finally, Dr. Griffith's office notes contain few, if any, clinical

10

findings that indicate an impairment or impairments of a disabling nature. Finally, as is Dr. Griffin's, Dr. Griffith's opinion is inconsistent with the reviewing physicians' opinions. (Tr. 221-26).

Under these facts, the Commissioner did not err by rejecting Dr. Griffin's and Dr. Griffith's opinions that Plaintiff is disabled.

The Court's duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

May 7, 2010.

                                         *s/ Michael R. Merz*
                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by

the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).